

FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 2 2 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

Turtle Island Foods, SPC, doing business as )
The Tofurky Company )
)
    Plaintiff, )
)
v. )  No. 4:19-cv-514-KGB
)
Nikhil Soman, in his official capacity as Director )
of the Arkansas Bureau of Standards ) This case assigned to District Judge Baker
) and to Magistrate Judge Ray
    Defendant. )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. This is a civil-rights action challenging the constitutionality of Ark. Code Ann. § 2-1-305 ("Act 501" or "the Act"). Act 501 prohibits purveyors of plant- or cell-based meats from using words the words "meat" and related terms like "beef," "pork," "roast," and "sausage." For example, the Act would prohibit Plaintiff from marketing "smoked ham style plant-based deli slices" or "plant-based jumbo hot dogs." Each violation of the Act, which would include each package for a plant- or cell-based meat product, is punishable by a civil penalty up to $1,000. The Act is effective July 24, 2019.

2. The Act is a restriction on commercial speech that prevents companies from sharing truthful and non-misleading information about their products. It does nothing to protect the public from potentially misleading information. Instead, it creates consumer confusion where none existed before in order to impede competition. As such, the Act violates the Free Speech Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and the dormant Commerce Clause.

1

3.  Plaintiff Turtle Island Foods, SPC, doing business as The Tofurky Company, seeks injunctive and declaratory relief pursuant to 42 U.S.C. § 1983 because the Act is unconstitutional on its face and as applied.

## JURISDICTION AND VENUE

4.  This action arises under the Constitution of the United States and the provisions of 42 U.S.C. § 1983. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a).

5.  This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the named defendant resides in Pulaski County, which is located in this judicial district, and a substantial part of the events or omissions giving rise to the claims occurred in Pulaski County.

## PARTIES

7.  Plaintiff Turtle Island Foods, SPC, doing business as The Tofurky Company (Tofurky Co.) is a social purpose corporation incorporated in the State of Washington and headquartered in Hood River, Oregon.

8.  Tofurky Co. uses the trademark name "Tofurky" for most of its plant-based products.

9.  Tofurky Co. develops, produces, markets, and sells plant-based food products. The products are marketed and sold nationwide, including throughout Arkansas.

10. Defendant Nikhil Soman is the Director of the Arkansas Bureau of Standards, a division of the Arkansas Department of Agriculture. He is charged with administering and enforcing the Act. Ark. Code Ann. § 2-1-304. He is sued in his official capacity only.

2

## FACTS

### Plant- and Cell-Based Meats

11. Plant-based meats are foods that approximate the texture, flavor, and appearance of meat derived from live animals. They are served and consumed just like any other meats. Plant-based meats are typically made from soy, tempeh, wheat, jackfruit, textured vegetable protein, or other vegan ingredients. Many varieties of plant-based meats are currently available in grocery stores, restaurants, and other retailers.

12. Consumers have different reasons for buying plant-based meats. Some choose plant-based meats out of concern for the environment or animal welfare; some seek out plant-based meats for health reasons; and some simply want to diversify their dining options.

13. Consumers rely on packaging and marketing to help them easily identify plant-based analogues to their favorite meat products.

14. Cell-based meats are made in cultivators from animal cells. Cell-based meat producers add nutrients like salts and sugars to animal cells, which grow into muscle, fat, and other tissues to form meat. The end result is animal meat, and it is indistinguishable from conventional meat at a genetic level. The technique for growing cell-based meat is well understood, but startups are still resolving technical challenges related to scale-up. This emerging industry has attracted corporate investors like Tyson and Cargill, as well as individual investors like Bill Gates.[1] Cell-based meat is not yet sold in supermarkets or restaurants.

---

[1] *See, e.g.*, Amanda Little, *Tyson Isn't Chicken*, Bloomberg Businessweek, Aug. 15, 2018, https://bloom.bg/2MREIlD; Michael Pellman Rowland, *Israeli Startup Aleph Farms Raises $11.65 Million to Create Steaks*, Forbes, May 14, 2019, https://bit.ly/2GezGOM.

3

15.     Animal agriculture industry representatives have warned producers that competition from plant- and cell-based meats is one of the "major challenges" faced by the animal meat industry.[2]

## Consumers Are Not Confused About Plant-Based Meats

16.     There is no evidence that consumers are confused about the ingredients or source of plant-based meats.

17.     Tofurky Co.'s packaging and marketing materials, for example, clearly indicate that the products are plant based, meatless, vegetarian, and vegan. These labels are entirely truthful and do not violate applicable labeling requirements set forth by the federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 343(a).

18.     Tofurky Co. and other purveyors of plant-based meats do not mislead consumers. To the contrary, their marketing emphasizes—through the use of commonly understood terms like "veggie burger"—that their products are plant-based alternatives to meat from live animals.

19.     Tofurky Co.'s packaging and marketing materials clearly indicate that their products are plant based and accurately convey the products' ingredients.

20.     Consumers are not likely to be confused by the appropriate use of the word "meat" or related terms on vegetarian or vegan products. A consumer who is looking for food that has the flavor, texture, and appearance of bacon but was not derived from a live pig would find the label "veggie bacon" more useful than a label that says only "plant-based protein."

---

[2] Chuck Jolley, *Six Greatest Ag Challenges for 2018*, Feedstuffs, Dec. 7, 2017, https://bit.ly/30E4mjX; *see also* Nat'l Cattlemen's Beef Ass'n, *2018 Policy Priorities*, https://bit.ly/2LrTPF4.

4

**Existing Law Already Prevents Actually Misleading or Deceptive Labeling**

21. Federal and state laws have long prohibited any misrepresentations in the marketing or packaging of food products.

22. Plant-based meat labels fall within the federal Food and Drug Administration's jurisdiction under the federal Food, Drug, and Cosmetic Act ("FDCA").

23. The FDCA categorizes a food product as "misbranded" if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

24. On information and belief, the FDA has not brought any enforcement action for the misleading use of "meat" or related terms to describe plant-based meats on food labels or marketing materials.

25. The future labels of cell-based meat from livestock and poultry species—beef, pork, chicken, duck, etc.—fall within the U.S. Department of Agriculture's jurisdiction under the Federal Meat Inspection Act ("FMIA") and the Poultry Products Inspection Act (PPIA). 21 U.S.C. §§ 457 and 607.[3]

26. The FMIA and PPIA categorize meat and meat food products as "misbranded" if their "labeling is false or misleading in any particular." 21 U.S.C. §§ 453 (h)(1) and 601(n)(1).

27. In addition, the Federal Trade Commission ("FTC") enforces the Federal Trade Commission Act ("FTCA"). *See* 15 U.S.C. § 45 (prohibiting "unfair or deceptive acts or practices" in or affecting commerce).

---

[3] *See* Formal Agreement Between the U.S. Dep't of Health & Human Servs. Food and Drug Admin. and U.S. Dep't of Agric. Off. of Food Safety 3, Mar. 7, 2019, https://bit.ly/2EVzaEZ (affirming that the USDA will ensure the "accurate labeling of human food products derived from the cultured cells of livestock and poultry subject to the FMIA and PPIA").

28.     The FTCA's prohibition on "unfair or deceptive acts or practices" encompasses food marketing.[4] The FTC has concurrent jurisdiction with respect to food products marketed to consumers. The FTC regulates the marketing and advertising of food products to prevent consumer confusion and to ensure that products are accurately marketed.

29.     In other words, the FTC already has authority to ensure that plant- and cell-based meat products are marketed honestly and that consumers are adequately informed.

30.     On information and belief, the FTC has not brought any enforcement action for the use of "meat" or related terms to describe plant-based on food labels or marketing materials.

31.     Arkansas' Food, Drug, and Cosmetic Act prohibits "false or misleading" labeling of food products. Ark. Code Ann. § 20-56-209(1).

32.     Arkansas' Deceptive Trade Practices Act prohibits "false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services." Ark. Code Ann. § 4-88-107(a)(1).

33.     On information and belief, there have been no cases in Arkansas (or any other state) holding that it is false or misleading to use the word "meat," or related terms, on labels and marketing materials for plant- or cell-based meats.

### The Act

34.     On March 18, 2019, Arkansas passed Act 501, Ark. Code Ann. §2-1-301 *et seq*.

35.     The Act's stated purpose "is to protect consumers from being misled or confused by false or misleading labeling of agricultural products that are edible by humans." Ark. Code Ann. § 2-1-301.

---

[4] *See* Memorandum of Understanding Between the Fed. Trade Comm'n and the Food and Drug Admin., MOU 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, 1971, https://bit.ly/2Y0iBxU; *see also Fresh Grown Preserve Corp. v. FTC*, 125 F.2d 917 (2d Cir. 1942).

36. The Act does not include any evidence or legislative findings indicating that consumers are misled or confused about the use of "meat" or related terms on labels for plant-based meats. Nor does the Act include any evidence or legislative findings indicating that consumers are likely to be misled or confused about the use of such terms on labels for cell-based meats.

37. One of the Act's proponents in the Arkansas General Assembly stated in a committee hearing that its purpose is "to protect the agricultural producers in the state," adding: "I want my rib-eye steak to have been walking around on four feet at one time or another." Proponents also indicated that that the Act is designed to provoke federal regulation by making it difficult for companies to comply with different state labeling requirements.

38. The Act goes into effect on July 24, 2019.

39. The Act makes it illegal for any person to "misbrand or misrepresent an agricultural product that is edible by humans, including without limitation, by: . . .

    (2) Selling the agricultural product under the name of another food;

    . . .

    (5) Representing the agricultural product as a food for which a definition and standard of identity has been provided by regulations under 20-56-219 or by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq., as it existed on January 1, 2019, unless: (A) The agricultural product conforms to the definition and standard; and (B) The label of the agricultural product bears the name of the food specified in the definition and standard and includes the common names of optional ingredients other than spices, flavoring, and coloring present in the food as regulations require.

    (6) Representing the agricultural product as meat or a meat product when the agricultural product is not derived from harvested livestock, poultry, or cervids;

    . . .

    (8) Representing the agricultural product as beef or a beef product when the agricultural product is not derived from a domesticated bovine;

(9) Representing the agricultural product as pork or a pork product when the agricultural product is not derived from a domesticated swine;

(10) Utilizing a term that is the same as or similar to a term that has been used or defined historically in reference to a specific agricultural product."

Ark. Code Ann. § 2-1-305.

40. The Act defines "meat" as "a portion of a livestock, poultry, or cervid carcass that is edible by humans." Ark. Code Ann. § 2-1-302(7)(A). The Act further states that "'Meat' does not include a: (i) Synthetic product derived from a plant, insect, or other source; or (ii) Product grown in a laboratory from animal cells." *Id.* § 2-1-302(7)(B). The Act defines "meat product" as "an agricultural product that is edible by humans and made wholly or in part from meat or another portion of livestock, poultry, or cervid carcass." *Id.* § 2-1-302(8)

41. The Act defines "beef" as "the flesh of a domesticated bovine, such as a steer or cow, that is edible by humans." Ark. Code Ann. § 2-1-302(2). The Act defines "beef product" as "an agricultural product that is edible by humans and produced in whole or in part from beef, including without limitation beef jerky, beef patties, chopped beef, fabricated steak, hamburger, ground beef, ribs and roast." *Id.* § 2-1-302(3).

42. The Act defines "pork" as "the flesh of a domesticated swine that is edible by humans." Ark. Code Ann. § 2-1-302(12). The Act defines "pork product" as "an agricultural product that is edible by humans and produced in whole or in part from pork, including without limitation bacon, bratwurst, ground pork, ham, pork chops, ribs, roast, and sausage." *Id.* § 2-1-302(13).

43. The Act defines "poultry" as "domestic birds that are edible by humans." Ark. Code Ann. § 2-1-302(14).

44. The Act imposes a civil penalty of $1,000 for each violation of § 2-1-305. Ark. Code Ann. § 2-1-306(a)(1) "Each item that violates § 2-1-305 constitutes a separate violation subject to the civil penalty." *Id.* § 2-1-306(a)(2).

### Effect of the Act on Tofurky Co.

45. The Act is specifically designed to disadvantage purveyors of plant- and cell-based meats, including Tofurky Co., by restricting how they market, package, and sell their products. The Act prevents marketing products as meat analogues or using meat terminology in truthful and non-misleading ways.

46. Tofurky Co. cannot accurately and effectively describe its products without comparison to the conventional meat products whose flavor profiles they are designed to invoke.

47. Since 1980, Tofurky Co. has invested significant time and expense in developing its plant-based meat products. It makes every effort to label and market those products in truthful and non-deceptive ways.

48. Tofurky Co. currently produces, markets, and sells the following products: "slow roasted chick'n;" "deli slices" in varieties including "smoked ham" and "bologna;" "hot dogs"; "sausages"; grounds in varieties including "ground chorizo" and "ground beef style"; "Italian sausage"; and "ham roast." All of these products are clearly labeled as plant based, vegan, or vegetarian.

49. These products are marketed and sold in Arkansas and nationwide.

50. Labels for these products include modifiers like "veggie," "all vegan," and "plant based" that clearly indicate that the products do not contain meat from slaughtered animals. For example, Tofurky Co.'s current packaging includes the following:

9






10



51. Tofurky Co.'s plant-based meat products, including those specifically referenced in this complaint, are distributed throughout Arkansas at many retailers, including: Natural Grocers, Cook's Natural Foods Market, Ozark Natural Foods, Walmart, Target, Whole Foods, and The Truck Patch Natural market.

52. Because Tofurky Co.'s packaging and marketing materials include terms applied to meat products made from live animals—such as "kielbasa," "hot dogs," "ham roast," and "bologna"—Tofurky Co. reasonably fears that its speech is prohibited under the Act.

53. The Act outlaws Tofurky Co.'s truthful and non-misleading speech and exposes the company to the substantial risk of ruinous civil penalties. Because Tofurky Co. markets and packages products in such a way that Arkansas could construe as violating Ark. Code Ann. § 2-1-305 it may be subject to massive civil penalties under the Statute.

54. To comply with the Act, Tofurky Co. must now: (1) choose to continue to have its products sold in the State of Arkansas as packaged, at substantial risk of ruinous civil liability; (2) design, produce, and distribute different, specialized marketing and packaging for its products when they will be sold in the state of Arkansas, creating a logistical nightmare in distribution channels that service neighboring states; (3) change the entirety of its marketing and packaging nationwide to comply with the Act, at considerable expense; or (4) refrain from marketing or selling its products in Arkansas at all.

55. Each of these options puts Tofurky Co. at a significant commercial disadvantage.

56. Retail chains that operate in Arkansas and other states may be less likely to carry plant-based meat products, including those produced and sold by Tofurky Co., if they cannot do so in the same manner in all of their stores.

57. Compliance with the Act may create bad will for Tofurky Co. Customers may be confused or frustrated by the counterintuitive messaging required under the Act.

58. Tofurky Co. may also be liable under the Act for their media advertising in other states that spills over into Arkansas markets, including regional and national advertising that reaches Arkansas consumers through print, television, radio, and the Internet.

59. The Act significantly hinders Tofurky Co.'s nationwide packaging and marketing of its products.

## COUNT I
### *Violation of Civil Rights - 42 U.S.C. § 1983*
### *First Amendment*

60. Tofurky Co. incorporates by reference the allegations made in the preceding paragraphs as if each were fully set forth herein.

61. In the following paragraphs, references to the First Amendment include the First Amendment as applied to the states by the Fourteenth Amendment.

62. The First Amendment protects the right to engage in truthful and non-misleading commercial speech concerning lawful activity.

63. Both on its face and as applied to Tofurky Co., Act 501 violates the First Amendment.

64. The Act unconstitutionally prohibits any individual or entity doing business in Arkansas, including Tofurky Co., from making truthful and non-misleading statements about the identity, quality, and characteristics of plant- and cell-based meat products.

65. Specifically, the Act prohibits businesses from truthfully packaging and marketing plant-based meat products in a manner that effectively describes them as replacements for conventional meat products.

66. The Act's restrictions on speech do not directly and materially advance any substantial government interest.

67. The Act's restrictions on speech are not appropriately tailored to any substantial government interest.

## COUNT II
### *Violation of Civil Rights - 42 U.S.C. § 1983*
### *Fourteenth Amendment Due Process Clause*

68. Tofurky Co. incorporates by reference the allegations made in the preceding paragraphs as if each were fully set forth herein.

69. The Fourteenth Amendment's Due Process Clause prohibits statutes that are unconstitutionally vague.

70. Because First Amendment freedoms need breathing space to survive, laws regulating speech are subject to a more stringent vagueness inquiry than laws regulating conduct.

71. Both on its face and as applied to Tofurky Co., Act 501 is unconstitutionally vague.

72. For example, it is unclear whether the Act prohibits Tofurky from packaging and marketing plant-based "deli slices" or plant-based "chick'n." *See* Ark. Code Ann. § 2-1-305(10) (prohibiting the use of "a term that is the same as or similar to a term that has been used or defined historically in reference to a specific agricultural product").

73. Act 501 fails to provide persons of ordinary intelligence a reasonable opportunity to understand when or how their packaging or marketing materials violate the Act.

74. The vagueness inherent in the Act's terms authorizes or encourages arbitrary and discriminatory enforcement.

## COUNT III
### *Violation of Civil Rights - 42 U.S.C. § 1983*
### *Dormant Commerce Clause*

75. Tofurky Co. incorporates by reference the allegations made in the preceding paragraphs as if each were fully set forth herein.

76. The Constitution's dormant Commerce Clause prohibits states from passing laws that discriminate against interstate commerce.

77. Both on its face and as applied to Tofurky Co., Act 501 violates the dormant Commerce Clause.

78. The Act regulates the interstate packaging and marketing of food products by any individual or entity that does business in Arkansas, regardless of whether those activities are directed at consumers in Arkansas.

79. For example, the Act prohibits Tofurky Co. from marketing its products on the Internet, because Tofurky Co. does business in Arkansas.

80. The Act also unconstitutionally burdens plant-based meat producers whose products are distributed in Arkansas, including Tofurky Co. To avoid violating the Act, these companies must now either conform their products' nationwide packaging and marketing to comply with the Act's requirements or establish a separate packaging and marketing regime for Arkansas.

81. The Act burdens these companies at the behest of in-state livestock and poultry producers who do not wish to compete against plant- and cell-based meat purveyors.

82. The Act was passed for the improper purpose of burdening interstate commerce.

83. The Act effectively regulates packaging and marketing activities that occur outside Arkansas' borders.

84. The Act impedes the flow of interstate commerce in food, which the public has a strong interest in keeping affordable and accessible.

85. The Act's burden on interstate commerce dramatically outweighs its local benefits.

86. The Act creates a genuine, credible, and immediate threat of harm to Tofurky Co.'s businesses and interstate commerce in general.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

    a. Declare that the Act's challenged provisions are unconstitutional, both on their face and as applied to Tofurky Co.;

    b. Upon motion, grant a preliminary injunction preventing the enforcement of the Act's challenged provisions, both on their face and as applied to Tofurky Co.;

    c. Grant a permanent injunction preventing the enforcement of the Act's challenged provisions, both on their face and as applied to Tofurky Co.;

    d. Award costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

    e. Allow such other and further relief as this Court finds just and proper.

Respectfully submitted,

*[signature]*

Jeff Priebe (AR 2001124)
James, Carter & Priebe, LLP
500 Broadway, Suite 400
Little Rock, Arkansas 72201
Email: jpriebe@jamescarterlaw.com
Telephone: (501) 372-1414
Facsimile: (501) 372-1659

Brian Hauss*
American Civil Liberties Union Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Email: bhauss@aclu.org
Phone: (212) 549-2500

Matthew Liebman*
Amanda M. Howell*
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, California 94931
Email: ahowell@aldf.org
Phone: (707) 795-2533

Jessica Almy*
The Good Food Institute
1380 Monroe St. NW #229
Washington, DC 20010
Email: jessicaa@gfi.org
Phone: (866) 849-4457

* *pro hac vice* motions forthcoming

**Attorneys for Plaintiff**

