**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| Turtle Island Foods, SPC, doing business as ) <br> The Tofurky Company ) <br> ) <br> Plaintiff, ) <br> ) <br> v.                                                    ) <br> ) <br> Nikhil Soman, in his official capacity as Director ) <br> of the Arkansas Bureau of Standards ) <br> ) <br> Defendant. ) | No. |

**DECLARATION OF JAIME ATHOS**

I, Jaime Athos, declare as follows:

    1.    I am the president and CEO of Turtle Island Foods, SPC (Tofurky), which is a plaintiff in the case captioned above. I am over the age of 18. I offer this declaration in support of Plaintiffs' motion for a preliminary injunction. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to those facts if called as a witness.

    2.    All of Tofurky's products are vegan.

    3.    Tofurky markets and packages plant-based meats that are sold in Arkansas. Plant-based meats are typically made from soy, tempeh, wheat, jackfruit, textured vegetable protein, or other vegan ingredients. The texture, flavor, and appearance of plant-based meats resembles meat products made from slaughtered animals. Unlike animal-based meats, however, plant-based meats are made from vegan ingredients.

    4.    The attachment to this declaration fairly and accurately depicts the primary display panel of some of Tofurky's plant-based meat products.

1

5. Tofurky uses terms like "chorizo," "ham roast," and "hot dogs," alongside qualifiers like "all vegan," "plant based," "vegetarian," and "veggie," to show that our products are plant-based meats that can be served and consumed just like any other meats.

6. Tofurky distinguishes our plant-based meat products from animal-based meat products through our marketing and packaging.

7. Tofurky does not want to deceive consumers into believing our plant-based meats are made from animals. To the contrary, Tofurky's packaging and marketing materials includes prominent qualifiers and descriptors showing that our plant-based meat products are *not* made from animals. The value proposition we offer consumers is that our products are plant based.

8. Tofurky also includes a list of ingredients and nutritional information on every product package.

9. Tofurky's plant-based meat products are marketed and sold nationwide.

10. I am not aware of a single consumer communication sent to Tofurky or to any government agency complaining that a consumer mistakenly believed Tofurky's plant-based meat products were, or contained meat, from slaughtered animals.

11. Tofurky has invested significant time and resources to develop packaging and marketing materials that effectively, truthfully, and non-deceptively promote its plant-based meat products. Each package design of Tofurky products is vetted internally and by third party compliance experts.

12. Tofurky's products, including its plant-based meat products, comply with federal food labeling regulations as well as numerous state and federal laws that prohibit false and deceptive labeling and marketing for food products and consumer products more generally.

13. Tofurky has never been the subject of enforcement action by any federal agency for marketing or labeling its products in a misleading manner.

14. Arkansas Act 501, Ark. Code Ann. § 2-1-301 *et seq*., prohibits Tofurky from using words like "meat," "beef," "chorizo," "sausage," and "roast" to describe its plant-based meat products. It may even prohibit Tofurky from accurately depicting our products in our marketing and on the packaging. The statute provides no exception for plant-based meat producers that clearly identify their products as being vegetarian, vegan, or made from plants. As a result, I reasonably fear that Tofurky could be penalized under the statute for Tofurky's current packaging and marketing materials—including the packaging shown in the attached document.

15. Each violation of the statute is punishable by a civil penalty of up to $1,000. Given the volume of Tofurky's business in Arkansas, I reasonably fear that Tofurky is exposed to ruinous civil liability under the statute.

16. Tofurky faces the untenable choice of: (1) risking massive civil penalties, along with all of the harms that result from being penalized, by continuing our current marketing and packaging practices; (2) creating specialized marketing and packaging practices just for the state of Arkansas, including attempting to police spillover from marketing in nearby states; (3) changing our marketing and packaging practices nationwide; or (4) refraining from marketing or selling our products in Arkansas at all.

17. The cost of changing our marketing and packaging practices nationwide would verge on $1,000,000. That said, it is impossible to ensure that no nationwide marketing enters Arkansas.

18. Further, it is logistically and financially impractical to create separate products to be sold within Arkansas alone. Instead, Tofurky would be forced to stop selling products in the

entire region. And thanks to the nature of distribution agreements, we cannot even ensure that Tofurky products would not cross state lines into Arkansas.

19.    Any of these options would be a significant burden, cost a considerable amount of money, and cause tangible market disadvantages.

20.    For instance, I believe retail chains that operate in Arkansas along with other states may be less likely to carry Tofurky's plant-based meat products if they cannot do so in all of their stores. Retail stores abhor disruption and complexity in the placing of products. This law may cause the larger and more streamlined stores—like Walmart, one of Tofurky's biggest retail partners—to be unable to offer Tofurky's products.

21.    In addition, Tofurky and I may be liable for our media advertising in other states that spills over into Arkansas markets (including regional and national advertising that reaches Arkansas consumers through print, television, radio, and the internet).

22.    Moreover, I believe that compliance with the Arkansas statute may also create bad will for Tofurky, as customers may be confused by the vague language required to comply with the statute. Tofurky uses terms like "burger," "chick'n," and "sausage" to efficiently inform our customers about the flavor, texture, and appearance of our plant-based meat products. If Tofurky is prohibited from using these terms, our customers will not understand what they are buying. For example, customers would likely be confused if Tofurky is forced to relabel our plant-based sausages as "plant-based savory roll" or "plant-based savory tube" in order to comply with the statute. Such confusion would likely result in bad will for Tofurky.

23.    I also believe that customers would likely be frustrated with the unavailability of our plant-based meat products in Arkansas or puzzled about why our products are called different names and packaged differently in Arkansas.

24. I believe that the loss of goodwill from our customers would be a significant burden for Tofurky. Although all corporations work to sustain their reputations, I believe that Tofurky does more than most: We have invested considerably to become a socially responsible corporation, including by becoming a Certified B Corporation, using mostly Forest Stewardship Council-certified paperboard, and seeking out vendors who are committed to environmental sustainability and fair trade.

25. I believe that Tofurky's current packaging and marketing materials accurately convey the nature and contents of our plant-based meat products. Despite this, we are now forced to consider whether we need to make costly changes to our marketing and packaging to comply with the Act.

26. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of August 2019.

By: _____
Jaime Athos






