IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**TURTLE ISLAND FOODS, SPC,**
**doing business as THE TOFURKY COMPANY**                                    **PLAINTIFF**

                v.                              **CASE NO. 4:19-CV-514-KGB**

**NIKHIL SOMAN, in his official capacity as**
**Director of the Arkansas Bureau of Standards**                              **DEFENDANT**

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION**
**FOR PRELIMINARY INJUNCTION**

---

**INTRODUCTION**

Tofurky's motion for preliminary injunction is an unnecessary rush to the courthouse to enjoin provisions of a statute that are currently not being enforced against it or any other purveyor of "plant-based" food products. There is no threat of irreparable harm to support a preliminary injunction, and the Company's shoot first, aim later tactic does not warrant this extraordinary remedy. Even if there was an imminent threat of irreparable harm, a preliminary injunction would still be unnecessary because Tofurky is not likely to succeed on the merits of its First and Fourteenth Amendment claims. Act 501 specifically identifies the conduct it outlaws, and the First Amendment does not give Tofurky a free speech right to deceive consumers. Tofurky has not met its heavy burden, and it would be inappropriate to preliminarily enjoin any portions of Act 501. The Court should deny Tofurky's motion for preliminary injunction.

## FACTUAL BACKGROUND

Plaintiff Turtle Island Foods, SPC, doing business as The Tofurky Company ("Tofurky"), sells "plant-based" food products in retail and grocery stores across the country, including in Arkansas. (Doc. 14-1, ¶¶ 3, 9). Tofurky designs its food products to "approximate the texture, flavor, and appearance of meat derived from slaughtered animals." (Doc. 14-1, ¶ 3). To that end, Tofurky advertises its food products using meat-based terms like "chorizo," "hot dogs," "sausage," and "ham roast." (Doc. 14-1, ¶¶ 4–5). Despite the fact Tofurky markets its products using traditional meat-based terms, and designs its products to resemble traditional meat products, Tofurky's products are typically made from soy, wheat, jackfruit, textured vegetable protein, or other vegan ingredients. (Doc. 14-1, ¶¶ 3).

A review of the handful of cherry-picked labels Tofurky provided with its motion for preliminary injunction reveals that Tofurky's labels rarely identify the components of its products. Instead, many of its labels bury the term "plant-based" somewhere on its packaging or otherwise resort to fine print to identify some of the components of its product. *See* (Doc. 14-1, *6–7). For example, Tofurky's label for its "Original Sausage Kielbasa" identifies the product as "sausage" in large, bold print. (Doc. 14-1, *7). The label also advertises the product as "a peppery Polish-style sausage with plenty of onion and garlic." (Doc. 14-1, *7). Only in fine print under the banner "Kielbasa" does the label indicate the product is not actually sausage at all but made of "Polish-style wheat gluten and tofu[.]"(Doc. 14-1, *7).

Similarly, Tofurky's label for its "slow roasted chick'n" does not dispel the notion that it is an actual poultry product until the consumer finds the phrase "plant-based" buried in the bottom corner of the label. (Doc. 14-1, *6). Even then it is unclear whether the phrase "plant-based" means the product contains no chicken at all or whether the base ingredients are plants while still containing some form of chicken in the product. (Doc. 14-1, *6). This misleading labeling practice is also evident from the label Tofurky provided for its "hot dogs." (Doc. 14-1, *6). Given that Tofurky only produced labels for seven products, it is likely many of its other products suffer from the same defects.

This past legislative session, the General Assembly passed Act 501, Ark. Code Ann. § 2-1-301, *et seq.* (*Act 501* [Ex. A]). The purpose of the Act "is to protect consumers from being misled or confused by false or misleading labeling of agricultural products that are edible by humans." Ark. Code Ann. § 2-1-301. To that end, the Act outlaws misbranding or misrepresenting an agricultural product edible by humans by, for example, representing the product as pork or a pork product (defined to include, among other things, sausage, bacon, and ham) when the product is not derived from a domesticated swine. *See* Ark. Code Ann. § 2-1-305(9).[1] The Act includes similar prohibitions for products represented as beef. Ark. Code Ann. § 2-1-305(8). The Act also prohibits a person from representing a food product "as meat or a meat product" when

---

[1] Tofurky notes Act 501 also prohibits "[r]epresenting the agricultural product as rice when the agricultural product is not rice," but Tofurky has not challenged that provision of the Act, nor has Tofurky challenged the Act's definition of "rice." Accordingly, the Court should disregard the issue.

the product is not derived from harvested livestock, poultry, or cervids. Ark. Code Ann.
§ 2-1-305(6).

Act 501 provides that the Director of the Arkansas Bureau of Standards shall (1) administer and enforce the Act; (2) promulgate rules to implement the purposes and requirements of the Act; and (3) receive and investigate complaints regarding alleged violations of the Act and the rules promulgated by the Director. Ark. Code Ann. § 2-1-304. Because Tofurky challenged the constitutionality of the Act before it was set to take effect, the Bureau has decided that it will not take steps to enforce the challenged portions of Act 501 until the Court resolves Tofurky's constitutional challenges. (*Soman Dec.*, [Ex. B] ¶¶ 6–7). Tofurky has not been assessed a civil penalty or fined under the Act, and the Bureau has not taken steps to begin penalizing or fining Tofurky under the Act. (*Soman Dec.*, [Ex. B] ¶ 8). Further, Tofurky has not alleged that it has taken any steps to remove its products from stores in Arkansas nor has Tofurky alleged that it has taken any steps to change its marketing practices for fear of Act 501's mandates. Indeed, it does not appear that Tofurky has removed any of its products or changed its labeling practices. (*Soman Dec.*, [Ex. B] ¶ 9).

## LEGAL STANDARD

A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008) (reversing preliminary injunction when movant did not establish irreparable injury was likely in the absence of an injunction.). Tofurky bears the burden of establishing the propriety of a preliminary injunction. *See Watkins, Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003).  Tofurky is only

entitled to a preliminary injunction if it shows that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 24-25; *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). "As is always true when weighing these factors to determine whether the extraordinary relief of a preliminary injunction should be granted, no single factor is in itself dispositive." *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993). Tofurky's burden "is a heavy one where, as here, granting the preliminary injunction will give [Tofurky] substantially the relief it would obtain after a trial on the merits." *Id.* (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 944 F.2d 438, 440 (8th Cir. 1991)).

Because a preliminary injunction would enjoin the operation of state law, Tofurky must make an even more rigorous showing of likelihood of success on the merits. *See Planned Parenthood of Minn. v. Rounds*, 530 F.3d 724, 732-33 (8th Cir. 2008) (en banc); *see also Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (injunctions "should not be granted unless the movant, *by clear showing*, carries" a burden greater than required on summary judgment) (internal quotation marks omitted) (emphasis in original). "A more rigorous standard 'reflects the idea that government policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" *Rounds*, 530 F.3d at 732 (quoting *Able v. U.S.*, 44 F.3d 128, 131 (2nd Cir. 1995) (per curiam)).

"[I]n a case such as this one, where a preliminary injunction is sought to enjoin the implementation of a duly enacted state statute, [] district courts [must] make a threshold finding that a party is likely to prevail on the merits." *Id*. at 732-33. "By reemphasizing this more rigorous standard for demonstrating a likelihood of success on the merits in these cases, we hope to ensure that preliminary injunctions that thwart a state's presumptively reasonable democratic processes are pronounced only after an appropriately deferential analysis." *Id*. at 733. Tofurky's motion for preliminary injunction should be denied because the Company has not met the threshold requirement of establishing that it has standing to challenge Act 501. In addition, Tofurky has not met its heavy burden of showing it is entitled to the extraordinary relief it seeks and each of the relevant factors weigh against granting the motion.

## ARGUMENT

I.      **The Court should deny Tofurky's motion for preliminary injunction because the Company lacks standing.**

Before moving to the *Dataphase* factors to determine whether a preliminary injunction is warranted, the Court must first consider the threshold issue of whether the Court has jurisdiction to consider the motion. Here, the Court should deny Tofurky's motion for preliminary injunction because there is not a credible threat that Tofurky will be prosecuted under Act 501 at this time and, as a result, the Company does not have standing to assert the claim.

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Spokeo, Inc. v.*

*Robins*, 136 S.Ct. 1540, 1547-49 (2016). "[A] federal court lacks jurisdiction over a case unless the plaintiff has standing to sue under Article III of the Constitution." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 935 (8th Cir. 2012). Accordingly, "[w]hether there is Article III standing to hear a claim is always an antecedent question." *Id*. (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-96 (1998)). Article III grants the judicial branch the authority to adjudicate "cases" and "controversies." *Id*. "In order to invoke the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution." *Iron Cloud v. Sullivan*, 984 F.2d 241, 242 (8th Cir. 1993).

Article III standing "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated."  *Flast v. Cohen*, 392 U.S. 83, 99 (1968).  To establish standing under Article III, a plaintiff must show that: (1) he or she personally has suffered some actual or threatened injury as a result of the allegedly illegal law; (2) the injury can fairly be traced back to the challenged action of the defendant; and (3) the injury is likely to be redressed by a favorable decision by the Court.  *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). Standing is "assessed under the facts existing when the complaint is filed." *Lujan*, 504 U.S. at 560 (plurality opinion). It is a jurisdictional issue that this Court "is bound to ask and answer for itself, even when not otherwise suggested." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). "As a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Hodak v. City of St. Peters*, 535 F.3d 899,

904 (8th Cir. 2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). As such, a party must establish Article III standing "to assert *this* claim against *these* defendants." *Duit Construction Co., Inc. v. Bennett*, 796 F.3d 938, 939 (8th Cir. 2015) (emphasis in original) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

Although a plaintiff "does not have to await the consummation of threatened injury to obtain preventative relief[,]" the injury must all the same be "certainly impending[.]" *Valley Forge Christian Coll.*, 454 U.S. at 472. When considering pre-enforcement cases, the Supreme Court has explained that "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, *and there exists a credible threat of prosecution thereunder*." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (emphasis added). Certainly, the party challenging a statute must have taken steps or threatened to take them that would make the threatened enforcement action "sufficiently imminent." *Id.* at 159.

Tofurky has not met its threshold burden of establishing that it has standing to challenge Act 501. Tofurky has not been assessed a civil penalty or fined under the Act, and the Bureau has not taken steps to begin penalizing or fining Tofurky under the Act. (*Soman Dec.*, [Ex. B] ¶ 8). Further, Tofurky has not alleged that it has taken any steps to remove its products from stores in Arkansas nor has Tofurky alleged that it has taken any steps to change its marketing practices for fear of Act 501's mandates. Indeed, it does not appear that Tofurky has removed any of its products or changed its labeling practices. (*Soman Dec.*, [Ex. B] ¶ 9). In short, Tofurky is facing no threat from Act 501

and it has not taken any steps to avoid any liability under the Act. Because Tofurky is not faced with "a credible threat of prosecution" that is sufficiently imminent under the Act, it does not have standing to challenge Act 501 at this time. *See Susan B. Anthony*, 573 U.S. at 159.

## II. The Court should abstain and defer to the authority of Arkansas' state courts to interpret this provision of Arkansas law.

Before the Court takes up whether Tofurky's pre-enforcement challenge warrants a preliminary injunction, the Court should first consider whether it should address the constitutionality of Act 501 or whether it should defer to the authority of the Arkansas state courts to interpret Arkansas law. *See, e.g., Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397–98 (1988) (noting that if a state law is readily susceptible to a narrowing construction that would make it constitutional under a First-Amendment challenge, then the statute will be upheld; noting that the state appellate court had not had the opportunity to consider the statute in question; and certifying a question to the state supreme court regarding what meaning should be given to a statute prohibiting display of certain materials in a manner whereby juveniles may examine or peruse the materials.).

Here, Tofurky has not been penalized or fined under Act 501 and the company has not alleged that it has been threatened with any penalty or fine. Further, Tofurky has not alleged that any purveyor of "plant-based" products has been penalized or fined, or even threatened with penalties or fines, under the Act. Accordingly, no state court has ever had the opportunity to consider the statute. Any party subject to future

enforcement of the statute will have the opportunity to challenge the statute's constitutionality and obtain a ruling on the matter in state court.

The Arkansas Supreme Court, rather than this Court, should have the first opportunity to consider the constitutionality of Act 501. Therefore, this Court should abstain and defer to the authority of the Arkansas courts to interpret state law. *Erzonznik v. City of Jacksonville*, 422  U.S. 205, 216 (1975) ("[W]hen considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program. In accommodating these competing interests the Court has held that a state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts, and its deterrent effect on legitimate expression is both real and substantial.") (internal citations omitted); *United Food & Commercial Workers Intern. Union, AFL-CIO, CLC v. IBP, Inc.*, 857 F.2d 422, 431 (8th Cir. 1988) ("[A] state statute should be deemed facially invalid only if (1) it is not readily subject to a narrowing construction by the state courts and (2) its deterrent effect on legitimate expression is both real and substantial. In considering the possibility of a narrowing construction, however, the court must bear in mind that federal courts are generally without authority to construe or narrow state statutes. Federal courts do not sit as a super state legislature, and may not impose their own narrowing construction if the state courts have not already done so.") (internal citations and quotations omitted).

**III.      The Court should deny Tofurky's motion for preliminary injunction because the Company has not clearly shown that it meets the rigorous standard for such extraordinary relief.**

Turning to the factors the Court must consider when determining whether a preliminary injunction is warranted, it is clear that such extraordinary relief is neither appropriate nor necessary here. Again, when addressing a motion for preliminary injunction, the Court should consider whether (1) Tofurky is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Dataphase*, 640 F.2d at 114. And, because granting the preliminary injunction will give Tofurky the same relief it would obtain after a trial on the merits, the Company's burden "is a heavy one." *Sanborn Mfg.*, 997 F.2d at 486. Each factor weighs against the extraordinary relief Tofurky seeks.

### A.      *Tofurky is not likely to succeed on the merits.*

A preliminary injunction is not warranted unless Tofurky can clearly establish that it is likely to succeed on the merits of its claims. *Mazurek*, 520 U.S. at 972. Because a preliminary injunction would enjoin the operation of state law, Tofurky's burden here is even more rigorous than the typical showing. *Rounds*, 530 F.3d at 732–33. It is not enough for Tofurky to show that it *might* be successful on the merits. *Sanborn Mfg.*, 997 F.2d at 488. Moreover, "[a]s a matter of  equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits." *Benisek v. Lamone*, 138 S.Ct. 1942, 1943–44 (2018) (per curium) (citing *Winter*, 555 U.S. 7, 32). Instead, it is incumbent on the Court to consider whether

or not the party seeking a preliminary injunction demonstrates "that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 1944.

Tofurky advances three claims in its complaint: (1) violation of the First Amendment, (2) violation of the Fourteenth Amendment, and (3) violation of the dormant Commerce Clause. (Doc. 1). Tofurky tacitly acknowledges that it's dormant Commerce Clause claim is doomed to fail, and it only advances its First and Fourteenth Amendment claims in support of its motion for preliminary injunction. (Doc. 15, *4). Those claims also fail on the merits and a preliminary injunction is inappropriate here.

Both of Tofurky's claims target the constitutionality of Act 501. Statutes are presumed to be constitutional, and Courts do not concern themselves with the merits of statutory policy. *See INS v. Chadha*, 462 U.S. 919, 944 (1983) ("We begin, of course, with the presumption that the challenged statute is valid. Its wisdom is not the concern of the courts; if a challenged action does not violate the Constitution, it must be sustained"); s*ee also Fairbank v. United States*, 181 U.S. 283, 285 (1901) ("The constitutionality of an act of Congress is a matter always requiring the most careful consideration. The presumptions are in favor of constitutionality, and before a court is justified in holding that the legislative power has been exercised beyond the limits granted, or in conflict with restrictions imposed by the fundamental law, the excess or conflict should be clear."); *Estate of Branson v. O.F. Mossberg & Sons*, 221 F.3d 1064, 1064 n. 4 (8th Cir. 2000) ("[S]tate statutes are presumed constitutional, and the plaintiff has the burden to show otherwise."). "[T]he elementary rule is that every reasonable

construction must be resorted to, in order to save a statute from unconstitutionality." *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). Tofurky has not met its burden of showing that it is likely to succeed on the merits of its First and Fourteenth Amendment claims.

### 1. Tofurky's First Amendment claim is unlikely to succeed on the merits.

Tofurky's First Amendment challenge to Act 501 is unlikely to succeed on the merits. As an initial matter, Tofurky's misleading commercial speech is not protected by the First Amendment. *See, e.g., 1-800-411 Pain Referral Service, LLC v. Otto*, 744 F.3d 1045, 1054 (2014). Even if it were, Act 501 would pass constitutional muster because the State has a substantial interest in suppressing misleading speech, the Act directly and materially advances that interest, and the Act's restrictions are tailored in a reasonable manner and are no more restrictive than necessary to advance the State's interest. *See Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 565–66 (1980).

### a. Tofurky's commercial speech does not come within the protections of the First Amendment because it is inherently misleading.

A threshold inquiry before the Court can assess whether Act 501 passes constitutional muster is whether the commercial speech at issue is protected under the First Amendment. *Central Hudson*, 447 U.S. 557. "The Constitution 'accords a lesser protection to commercial speech than to other constitutionally guaranteed expression.'"

*411 Pain*, 744 F.3d at 1054 (quoting *Central Hudson*, 447 U.S. at 561). If the speech is inherently misleading, it is not a protected form of expression. *Id.* at 1056. "Inherently misleading" speech is speech that inevitably will be misleading to consumers. *Id.* "The 'inherently misleading' character of speech may be inferred from the 'particular content or method of the advertising' as well as from 'experience that has proved that in fact such advertising is subject to abuse.'" *Id.* (quoting *In re R.M.J.*, 455 U.S. 191, 203 (1982)). "Misleading advertising may be prohibited entirely." *Id.* The Eighth Circuit has explained that when advertising is inherently misleading, "we need not require the state to conduct a survey of the public before it may determine that the advertisement had a tendency to mislead." *Id.* at 1062.

The Eighth Circuit has explained that advertising which misrepresents the nature of the product being advertised, or omits important aspects of the product, are inherently misleading. For example, in *411 Pain*, the Eighth Circuit affirmed a district court's order denying a motion for preliminary injunction in a commercial speech case because the advertising at issue was inherently misleading. 744 F.3d at 1056. The plaintiff, a referral company who referred interested callers to health care providers or attorneys in the caller's geographic area, advertised a possible entitlement of "up to $40,000 in injury and lost wage benefits." *Id.* at 1056. The company challenged a newly-enacted Minnesota statute which prohibited solicitations or advertisements for medical-treatment referrals from referencing the dollar amounts of potential benefits. *Id.* at 1050–51. Although the plaintiff's advertisement listed the dollar amount in terms of "benefits" rather than a cash payment, the Eighth Circuit held the advertisement was

"inherently misleading" because "the effect of invocation of money without reference to the Act or a description of the way the benefits are obtained misleadingly implies that 411-Pain will acquire cash and pass along a portion of it to the car accident victim." *Id.* at 1056.

Similarly, Tofurky's labels for its "plant-based" products are inherently misleading because they use the names and descriptors of traditional meat items but do not actually include the product they invoke. Tofurky designs its food products to "approximate the texture, flavor, and appearance of meat derived from slaughtered animals." (Doc. 14-1, ¶ 3). To that end, Tofurky advertises its food products using meat-based terms like "chorizo," "hot dogs," "sausage," and "ham roast." (Doc. 14-1, ¶¶ 4–5). Despite the fact Tofurky markets its products using traditional meat-based terms, and designs its products to resemble traditional meat products, Tofurky's products are typically made from soy, wheat, jackfruit, textured vegetable protein, or other vegan ingredients. (Doc. 14-1, ¶¶ 3).

A review of the handful of cherry-picked labels Tofurky provided with its motion for preliminary injunction reveals that Tofurky's labels rarely identify the components of its products. Instead, many of its labels bury the term "plant-based" somewhere on its packaging or otherwise resorts to fine print to identify some of the components of its product. *See* (Doc. 14-1, *6–7). For example, Tofurky's label for its "Original Sausage Kielbasa" identifies the product as "sausage" in large, bold print. (Doc. 14-1, *7). The label also advertises the product as "a peppery Polish-style sausage with plenty of onion and garlic." (Doc. 14-1, *7). Only in fine print under the banner

"Kielbasa" does the label indicate the product is not actually sausage at all but made of "Polish-style wheat gluten and tofu[.]"(Doc. 14-1, *7).

Similarly, Tofurky's label for its "slow roasted chick'n" does not dispel the notion that it is an actual poultry product until the consumer finds the term "plant-based" buried in the bottom corner of the label. (Doc. 14-1, *6). Even then it is unclear whether the term "plant-based" means the product contains no chicken at all or whether the base ingredients are plants while still containing some form of chicken in the product. (Doc. 14-1, *6). This misleading labeling practice is also evident from the label Tofurky provided for its "hot dogs." (Doc. 14-1, *6). Given that Tofurky only produced labels for seven products, it is likely many of its other products suffer from the same defects. Because the components of Tofurky's products are unclear, this case is not like those cases relied upon by Tofurky, including *Ang. v. Whitewave Foods Co.*, Case No. 13-CV-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013). Based on the "particular content or method of the advertising," Tofurky's labeling practices are inherently misleading and not protected by the First Amendment.

Nevertheless, Tofurky argues that its advertising is not inherently misleading because words like "meat," "burger," and "steak" have been purportedly used "for decades" with "plant-based" foods and, as a result, cannot be confusing to consumers. (Doc. 15, *7). Tofurky's argument is circular. The fact that such words have been misapplied in the past does not categorically mean they are no longer misleading to consumers. Further, Tofurky's broad argument ignores the facts here. The Company's advertising specifically invokes traditional meat items by, for example, using the words

"sausage" and "chick'n" as well as designing its products to look like those traditional meat items. Tofurky's intentional invocation of traditional meat products to sell its "plant-based" food is a far cry from the use of "meat" when discussing a coconut and "beef" when discussing beefsteak tomatoes.

Tofurky relies heavily on *Pearson v. Shalala*, 164 F.3d 650 (D.C. Cir. 1999), for the proposition that there is a "high bar" to show commercial speech is inherently misleading. (Doc. 15, at *6–7). *Pearson* is distinguishable from the case at bar. In *Pearson*, the government argued that health claims about dietary supplements lacking "significant scientific agreement" were inherently misleading because "they have such an awesome impact on consumers as to make it virtually impossible for them to exercise any judgment *at the point of sale*. It would be as if the consumers were asked to buy something while hypnotized, and therefore they are bound to be misled." 164 F.3d at 655 (emphasis in original). The court rejected the argument. *Id.*

That is not the issue here. The Bureau does not claim that Tofurky's labels "have an awesome impact on consumers" or "hypnotize" them, but rather that the labels represent Tofurky's food to be something it is not which, given the language, appearance, and location of the products in the store, is inherently misleading to consumers. Tofurky may prefer to use terms like "sausage" and "chick'n" rather than "veggie tube" because those terms are more appealing to consumers, but the Company's inability to market its products by accurately describing their contents does not implicate First Amendment protections.

>    b.  **Even if the First Amendment applied, Act 501 passes
>        scrutiny because the State has a substantial interest in
>        regulating the speech.**

A state's restriction on commercial speech is permissible when the state has a substantial interest in regulating the speech. *Central Hudson*, 447 U.S. at 568. Here, the purpose of the Act "is to protect consumers from being misled or confused by false or misleading labeling of agricultural products that are edible by humans." Ark. Code Ann. § 2-1-301. There can be no real dispute that Arkansas has a substantial interest in protecting consumers from deceptive and misleading advertisement. *See, e.g., 411 Pain*, 744 F.3d 1061; *Edenfield v. Fane*, 507 U.S. 761, 768 (1993) ("the First Amendment does not prohibit the State from insuring that the stream of commercial information flows cleanly as well as freely[.]"). Tofurky acknowledges as much and does not argue to the contrary.

Instead, Tofurky speculates that Act 501's "true purpose" is "to stoke confusion in order to benefit the economic interests of the meat industry." (Doc. 15, at *9–10). Tofurky's unfounded fear of an industry-wide conspiracy is dispelled by its own evidence. For example, the declaration of Marcus Onley attached in support of Tofurky's motion explains that proponents of Act 501 were concerned with lies and misleading statements "for the sake of the consumer[.]" (*Onley Dec.* [Doc. 14-2] ¶ 10). Likewise, proponents of Act 501 were also concerned that purveyors of "plant-based" foods were not being honest with consumers and accurately identifying the substance of their products. (*Onley Dec.* [Doc. 14-2] ¶ 9). Rather than support Tofurky's speculation of an industry-wide conspiracy, the Company's evidence confirms that the

legislative purpose stated in the Act is the same purpose motivating the proponents of Act 501. The State has a substantial interest in preventing the misleading and confusing advertising targeted by Act 501.

### c. Act 501 directly and materially advances the State's interest.

A state's restriction on commercial speech must directly advance the governmental interest asserted. *Central Hudson*, 447 U.S. at 566. When there is an immediate connection between the conduct sought to be prohibited and the speech sought to be regulated, there is typically a direct link between the state's interest and the regulation in question, satisfying this requirement. *See, e.g., id.* at 569.

Act 501's prohibitions directly and materially advance the State's interest here. The Act outlaws misbranding or misrepresenting an agricultural product edible by humans by, for example, representing the product as pork or a pork product (defined to include, among other things, sausage, bacon, and ham) when the product is not derived from a domesticated swine. *See* Ark. Code Ann. § 2-1-305(9). The Act includes similar prohibitions for products represented as beef. Ark. Code Ann. § 2-1-305(8). The Act also prohibits a person from representing a food product "as meat or a meat product" when the product is not derived from harvested livestock, poultry, or cervids. Ark. Code Ann. § 2-1-305(6). By prohibiting entities from labeling their "plant-based" products as "meat," "sausage," or "chicken," for example, Act 501 protects consumers from being misled or confused by those entities' false or misleading labeling. Like in *Central Hudson*, there is an immediate connection between what the Act seeks to prohibit and

the speech that is sought to be regulated to achieve that result. As a result, the Act directly and materially advances the State's interest.

Tofurky argues that this prong is not satisfied because "there is no evidence in the legislative record demonstrating that consumers are confused or deceived by labeling or marketing materials for plant-based meats." (Doc. 15-1, at *8). Tofurky's argument puts the cart before the horse and exemplifies why its motion for preliminary injunction is an unnecessary rush to the courthouse. At this juncture, with only a handful of cherry-picked labels to consider and the self-serving testimony of Tofurky's CEO, the Court's ability to evaluate the validity of the Act "is constrained by the lack of a developed record." *411 Pain*, 744 F.3d at 1057 (affirming denial of motion for preliminary injunction.). Tellingly, none of the cases upon which Tofurky rely for this proposition were decided in the context of a motion for preliminary injunction. *See, e.g., Edenfield*, 507 U.S. at 765 (decided on summary judgment); *Safelite Group, Inc. v. Rothman*, 229 F. Supp. 3d 859, 863–64 (D. Minn. Jan. 23, 2017) (same). Tofurky would have the Court conduct a trial on the merits based on Tofurky's paltry evidence alone rather than allow the parties to fully explore the issue during discovery. This issue is particularly pertinent here given that Tofurky faces no threat of prosecution under the Act.

### d. Act 501's restriction is no more extensive than necessary to advance the State's interest.

"[L]aws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield*, 507 U.S. at 767. Limitations on commercial speech do not violate the First Amendment when the limitation is no more extensive that is necessary to serve the governmental interest. *Central Hudson*, 447 U.S. at 566. In addressing this issue, courts look to whether a more limited speech regulation would be ineffective at advancing the governmental interest at issue. *Id.* at 570–71.

Act 501's prohibitions are only as restrictive as necessary to advance the State's substantial interest. The Act seeks to prohibit entities from labeling their food products with traditional meat-based terms when the food items do not, in fact, contain the traditional meat products they invoke. The Act identifies in detail the specific words and descriptors that it seeks to prohibit. For instance, the Act outlaws misbranding or misrepresenting an agricultural product edible by humans by, for example, representing the product as pork or a pork product (defined to include, among other things, sausage, bacon, and ham) when the product is not derived from a domesticated swine. *See* Ark. Code Ann. § 2-1-305(9). The Act provides similar provisions for beef products and other items. *See* Ark. Code Ann. § 2-1-305. The Act extends no further than necessary to achieve its stated legislative purpose.

There is no narrower restriction on speech that would accomplish the legislative purpose of Act 501. Tofurky argues that, rather than restricting the use of meat-based terms, the General Assembly could have imposed specific disclosure requirements. (Doc. 15, *12). Although Tofurky contends specific disclosure requirements are generally considered "constitutionally preferable to outright suppression," *Pearson*, 164 F.3d at 657, a specific disclosure requirement here would not remedy the harm sought to be prevented by Act 501. Tofurky's labeling for its "sausage" would still be misleading and confusing for consumers because the product would still be labeled as "sausage," would still be designed to look like sausage, and would still otherwise suggest that it was, in fact, sausage, without ever actually containing any pork. Just like now, Tofurky's label would be misleading and confusing. In any event, even if Act 501 only provided for specific disclosure requirements, Tofurky would likely continue to argue that the requirement would run afoul of the First Amendment.

Tofurky also argues that Act 501 is more restrictive than necessary because "[n]umerous state and federal laws" already "prohibit mislabeling of food products and consumer products more generally." (Doc. 15, *11). This argument misses the mark because the fact that other statutes prohibit mislabeling of food products does not foreclose the more specific legislation at issue here, which was passed to combat a specific problem in a particular industry. Tofurky's implication that it might be in violation of other statutes does not mean the General Assembly violated the First Amendment when it enacted Act 501. The Court should deny Tofurky's motion for

preliminary injunction because the Company has not shouldered its heavy burden of establishing that it is likely to succeed on the merits of its First Amendment claim.

> ### 2. Tofurky's Fourteenth Amendment claim is not likely to succeed on the merits.

Tofurky is not likely to succeed on the merits of its Fourteenth Amendment claim. To survive a vagueness challenge, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited[.]" *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). And it must establish "minimal guidelines" to prevent "arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983). The Constitution, however, does not impose "impossible standards of clarity." *Id.* at 361 (internal quotation omitted). Nor does it require "mathematical certainty" or "meticulous specificity" from statutory language. This is true even of "regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Instead, a statute is not vague if it is "clear what the [statute] as a whole prohibits." *Grayned*, 408 U.S. at 110. In the same way commercial speech is afforded fewer protections than other forms of expression, commercial speech also requires a greater level of vagueness for a Fourteenth Amendment challenge. *See, e.g., Harrell v. Florida Bar*, 915 F. Supp. 2d 1285, 1294–95 (M.D. Fla. 2011). "Moreover, the Supreme Court 'has expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.'" *Id.* (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99 (1982)).

Tofurky argues that it is likely to succeed on the merits of its Fourteenth Amendment claim, but the Company only identifies one subsection of Act 501 that it claims is impermissibly vague. (Doc. 15, *13–14). Tofurky argues that the Act's prohibition on the use of any "term that is the same as or similar to a term that has been used or defined historically in reference to a specific agricultural product" does not provide sufficient guidance to what terms are prohibited by the Act. *See* Ark. Code Ann. § 2-1-305(10). Tofurky does not appear to single out any other subsections of the Act it claims are impermissibly vague.

Considering the Act as a whole, it is plain what Act 501 regulates. The Act defines and provides examples of what constitute "beef," "beef product," "livestock," "pork," "pork product," "poultry," and other key provisions. *See* Ark. Code Ann. § 2-1-302. The Act also identifies the specific activities regulated by the Act. *See* Ark. Code Ann. § 2-1-305. The statute's provisions give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. *See Grayned*, 408 U.S. at 108. Tofurky's focus on a single provision of Act 501 ignores the specific, plain provisions set forth in the remainder of the Act that establish what the Act prohibits.

Even if the Court determines that Ark. Code Ann. § 2-1-305(10) is impermissibly vague, the Court should not enjoin the entire statute. The Act provides for severability if any provision of the Act is deemed invalid. (*Act 501* [Ex. A]). While the Court should not preliminarily enjoin any provision of the Act, if it is inclined to do so, the Court should sever the provision it determines is unconstitutionally vague and allow the remainder of the statute to remain in effect.

**B.    The Court should deny the motion because Tofurky is not likely to suffer irreparable harm.**

A preliminary injunction is not appropriate unless Tofurky shows a threat of irreparable harm that is likely to occur in absence of the injunction. *Winter*, 555 U.S. at 22. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id.*   This factor overwhelmingly weighs against preliminarily enjoining portions of Act 501 because ***Tofurky is not facing any irreparable harm*** because the challenged portions of Act 501 are not being enforced during this litigation.

There can be no real dispute that Tofurky is not facing any irreparable harm in the absence of a preliminary injunction. Because Tofurky challenged the constitutionality of the Act before it was set to take effect, the Bureau has decided that it will not take steps to enforce the challenged portions of Act 501 until the Court resolves Tofurky's constitutional challenges. (*Soman Dec.*, [Ex. B] ¶¶ 6–7). Tofurky has not been assessed a civil penalty or fined under the Act, and the Bureau has not taken steps to begin penalizing or fining Tofurky under the Act. (*Soman Dec.*, [Ex. B] ¶ 8). Further, Tofurky has not alleged that it has taken any steps to remove its products from stores in Arkansas nor has Tofurky alleged that it has taken any steps to change its marketing practices for fear of Act 501's mandates. Indeed, it does not appear that Tofurky has removed any of its products or changed its labeling practices. (*Soman Dec.*, [Ex. B] ¶ 9). In short, Tofurky is facing no threat from Act 501 and it has not taken any steps to avoid any liability under the Act because it knows it is not facing any irreparable harm.

Tofurky argues that *any* restriction on First Amendment rights "unquestionably" constitutes irreparable harm and that, even if it did not, the State's sovereign immunity prevents Tofurky from recovering damages as a result of the Act. (Doc. 15, at *15). Tofurky's argument lacks merit. As an initial matter, Tofurky's argument turns the preliminary injunction standard on its head and would seemingly provide for a preliminary injunction any time speech claims are at issue. Further, because the Bureau is not enforcing the challenged portions of the Act against Tofurky or any other business until Tofurky's constitutional challenge is resolved, Tofurky's First Amendment rights are not restricted at all and it will have no damages for which it could seek relief. Indeed, Tofurky has not claimed that it has been forced to stop labeling its "plant-based" products with the terms "sausage," "hot dogs," "chick'n," or other such phrases. Likewise, Tofurky has not alleged that it has suffered any financial loss as a result of the Act.

Instead, Tofurky is concerned about *future* harm that can only occur once enforcement of the Act commences. The Supreme Court, however, has warned that preliminary injunctions are not an appropriate remedy "simply to prevent the possibility of some remote future injury." *See Winter*, 555 U.S. at 22. The reality is that Tofurky faces the same risk of harm now that it will face if the Court preliminarily enjoins the statute: none. Because a preliminary injunction will not reduce any risk of irreparable harm (because there is none), the extraordinary remedy of preliminarily enjoining the statute before a trial on the merits is unwarranted here.

### C. The balance of hardships weighs against granting the motion for preliminary injunction.

"The third *Dataphase* factor requires a district court to consider the balance between the harm to the movant and the injury that granting the injunction will inflict on other interested parties." *Sanborn Mfg.*, 997 F.2d at 489. This factor does not weigh in favor of granting a preliminary injunction because, as explained above, Tofurky will not suffer any harm absent a preliminary injunction.

Tofurky argues that the "harms caused to Tofurky by Act 501 significantly outweighs the burden an injunction would place on the State or the public." (Doc. 15, at *16). Specifically, Tofurky claims that compliance with the Act will have significant financial consequences, including risking "massive civil penalties," and other problems. *Id.* Tofurky's argument focuses on the potential harm it will allegedly suffer if Act 501 is enforced but, as explained above, there is no risk of such enforcement here until Tofurky's constitutional challenge is resolved. As a result, a preliminary injunction will not lessen the risk of this non-existent harm because the harm would not occur even in the absence of the preliminary injunction. Therefore, the balance between the harm to Tofurky and the injury that granting the injunction will inflict on other interested parties does not weigh in favor of granting the preliminary injunction.

### D. The public interest does not weigh in favor of granting the preliminary injunction.

The final *Dataphase* factor is whether the issuance of an injunction is in the public interest. *Sanborn Mfg.*, 997 F.2d at 486. Tofurky gives short shrift to this factor and broadly asserts that, because constitutional rights are at issue, it is always in the public

interest to protect those rights. (Doc. 15, at *17). Again, Tofurky's broad assertion misses the mark. The question is not whether the rights at issue are important to the public but whether issuing the preliminary injunction furthers the public's interest. *Sanborn Mfg.*, 997 F.2d at 486. This factor does not weigh in favor of the extraordinary relief Tofurky seeks because issuing the injunction will have no effect on Tofurky's speech or the public's access to the free flow of commercial information. Tofurky can (and, in fact, has) continue its labeling practices at this time with or without a preliminary injunction because the Bureau is not enforcing the challenged portions of the statute here. A preliminary injunction will not advance or protect the public's interest any further than the status quo. As a result, the Court should deny Tofurky's motion.

## CONCLUSION

The Court should reject Tofurky's unnecessary rush to the courthouse. The Eighth Circuit has made clear that Tofurky's burden of establishing that it is entitled to the extraordinary remedy of a preliminary injunction is a heavy one and, after consideration of each of the *Dataphase* factors, it is plain that Tofurky cannot carry that burden here. Tofurky is not likely to succeed on the merits of its First and Fourteenth Amendment claims because the Constitution does not give Tofurky a free speech right to deceive consumers. Critically, the Supreme Court has warned that a preliminary injunction is inappropriate when there is not a threat of irreparable harm that is likely to occur in absence of the injunction. Tofurky faces no risk of irreparable harm – with or without a preliminary injunction – because the challenged portions of Act 501 are not

being enforced while Tofurky's constitutional challenge is being resolved. The Court should deny Tofurky's motion for preliminary injunction.

Respectfully submitted,

LESLIE RUTLEDGE
Attorney General

Jerry Garner
Ark Bar No. 2014134
Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Tel.: (501) 682-1723
Fax: (501) 682-2591
Email: jerry.garner@arkansasag.gov

*Attorneys for Defendant*