**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**TURTLE ISLAND FOODS, SPC,**
**doing business as THE TOFURKY COMPANY**                    **PLAINTIFF**

     **v.**                    **CASE NO. 4:19-CV-514-KGB**

**NIKHIL SOMAN, in his official capacity as**
**Director of the Arkansas Bureau of Standards**                    **DEFENDANT**

---

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS REQUEST**
**FOR FACIAL DECLARATORY AND INJUNCTIVE RELIEF**

---

     Pursuant to the Court's Order of December 15, 2020, Dkt. No. 42, Plaintiff Turtle Island Foods SPC, d/b/a The Tofurky Company ("Tofurky") hereby files this supplemental memorandum concerning its request for declaratory and injunctive relief against certain provisions of Act 501, Ark. Code Ann. § 2- 1-301, *et seq.*

     There are six specific provisions at issue in this lawsuit: Ark. Code Ann. §§ 2-1-305(2), (5), (6), (8), (9), and (10). Dkt. No. 1. For the reasons set forth below, subsections (6), (8), (9), and (10) facially violate the First Amendment, and subsection (10) is also void for vagueness. In addition to declaratory relief facially invalidating these provisions, a statewide permanent injunction is warranted. Finally, subsections (2) and (5) are unconstitutional as applied to the labels at issue in this case and should be permanently enjoined on that basis.

## BACKGROUND

     On July 22, 2019, Tofurky filed this lawsuit against defendant Nikhil Soman, in his official capacity as Director of the Arkansas Bureau of Standards ("the State"). Tofurky alleged that the challenged provisions of Act 501 unconstitutionally restrict the use of the word "meat"—as well

as meat-related terms such as "beef," "chorizo," "sausage," and "roast"—to describe agricultural products that were not derived from slaughtered animals. Dkt. No. 1. Tofurky claimed that the challenged provisions violate the First and Fourteenth Amendments, both on their face and as applied to Tofurky, as well as the Dormant Commerce Clause. *Id.* On August 14, 2019, Tofurky moved for a preliminary injunction on its First and Fourteenth Amendment claims. Dkt. No. 14.

On December 11, 2019, the Court granted Tofurky's motion for a preliminary injunction against the challenged provisions. Dkt. No. 25. Observing that "[n]o party argues that Tofurky's advertisements and labels do not fall within the scope of Act 501," the Court held that the case is justiciable. *Id.* at 10. Given the "stage of the proceeding, and on the record before it, the Court confine[d] its analysis to an as applied challenge brought by Tofurky." *Id.* at 16.

The Court held that Tofurky was likely to prevail in demonstrating that the challenged provisions fail intermediate scrutiny under *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980). In particular, the Court concluded that the State had thus far failed to carry its burden of demonstrating that: (1) the Tofurky labels in the record are either unlawful or inherently misleading, Dkt. No. 25 at 25; (2) the challenged provisions directly and materially advance the State's asserted interest in "protect[ing] consumers from being misled or confused by false or misleading labeling of agricultural products that are edible by humans," *id.* at 26; and (3) the challenged provisions are no more extensive than necessary to serve the State's asserted interest, *id.* at 26. Because the Court concluded that Tofurky was likely to prevail on its First Amendment commercial speech claim, it declined to evaluate Tofurky's vagueness claim under the Fourteenth Amendment's Due Process Clause. *Id.* at 28.

The Court further held that Tofurky had demonstrated irreparable harm based on the threatened violation of its First Amendment rights, the potential exposure to ruinous civil liability,

and the unavailability of money damages. *Id.* at 28–30. Finally, the Court concluded that the balance of equities and the public interest both favored the protection of First Amendment rights and the continued flow of lawful, non-misleading commercial information to Arkansas consumers. *Id.* at 30–32. Accordingly, the Court entered a preliminary injunction prohibiting the State from enforcing the challenged provisions against Tofurky. *Id.* at 33.

Tofurky filed the operative amended complaint on April 15, 2020. Dkt. No. 31. The amended complaint removed Tofurky's Dormant Commerce Clause claim and corrected a typographical error. Dkt. No. 29. The State filed its answer on April 16, 2020. Dkt. No. 32.

On September 23, 2020, the parties filed a joint motion, pursuant to Federal Rule of Civil Procedure 65(a)(2), to consolidate the preliminary injunction proceedings with the trial on the merits. Dkt. No. 40. The parties stipulated "that no discovery is necessary, and agreed that the record before the Court on Plaintiff's motion for preliminary injunction is sufficient for the entry of a final order and judgment related to the six provisions of Act 501 challenged by Plaintiff here." *Id.* at 1. While acknowledging that the Court limited its preliminary injunction analysis to Tofurky's as-applied claim, Tofurky respectfully requested all the relief identified in the amended complaint, including facial declaratory and injunctive relief. *Id.* at 2. The State respectfully disagreed with the Court's resolution of the preliminary injunction motion and preserved all rights of appeal. *Id.* at 3.

On December 15, 2020, the Court granted the parties' joint motion to consolidate the preliminary injunction proceedings with the trial on the merits. Dkt. No. 42.

**ARGUMENT**

I.      **Ark. Code Ann. §§ 2-1-305(6), (8), (9), and (10) Facially Violate the First Amendment.**

In its preliminary injunction order, this Court held that Tofurky was likely to prevail on its First Amendment claim because the State had failed to carry its burden of demonstrating that the challenged provisions of Act 501 satisfy intermediate scrutiny under *Central Hudson*. Dkt. No. 25 at 19. In light of the preliminary stage of the proceedings, the Court confined its analysis to Tofurky's as-applied claim; however, the rationale for the Court's decision applies with equal force to Tofurky's facial claim. The State has failed to carry its burden of demonstrating that the challenged provisions: (1) are limited to unlawful or inherently misleading commercial speech; (2) directly and materially advance the State's asserted interest in preventing consumer confusion; and (3) are no more burdensome than necessary to vindicate the State's asserted interest.

To be sure, the Supreme Court has held that the overbreadth doctrine does not generally apply to commercial speech claims. *See Central Hudson*, 447 U.S. at 565 n.8. This means that a plaintiff who has "engaged in no constitutionally protected activity" may not invoke the First Amendment interests of third parties "not before the court" in order to challenge the statute's facial validity. *Id.*; *see also, e.g.*, *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380 (1977) ("The First Amendment overbreadth doctrine, however, represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court."). However, restrictions on commercial speech may be facially challenged by a plaintiff whose own constitutionally protected speech is prohibited. *See Central Hudson*, 447 U.S. at 565 n.8 ("In this case, the Commission's prohibition [against promotional advertising by electrical utilities] acts directly against the promotional activities of Central Hudson, and to the extent the limitations are unnecessary to serve the State's

4

interest, they are invalid."); *see also id.* at 606 (Rehnquist, J., dissenting) (objecting to the Court's "facial invalidation of the ban").

For all the reasons enumerated in Tofurky's memorandum supporting its motion for preliminary injunction and the Court's preliminary injunction order, Tofurky's speech is both constitutionally protected and restricted by the challenged provisions of Act 501. Dkt. No. 15 at 3–4, 6–7; Dkt. No. 25 at 10, 22–25. "Where, as here, a statute imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State's objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to facial attack." *Sec'y of State of Md. v. Joseph H. Munson Co*., 467 U.S. 947, 967–68 (1984) (footnote omitted) (citing, *inter alia*, *Central Hudson*, 447 U.S. at 565 n.8).

The Supreme Court, the Eighth Circuit, and its sister circuits have struck down numerous commercial-speech restrictions under *Central Hudson*'s third and fourth prongs, which require the government to demonstrate that the challenged restriction: directly and materially advances an important government interest; and does not burden more speech than necessary to protect that interest. *See, e.g.*, *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 577–580 (2011) (facially invalidating a state statute restricting the dissemination and use of prescriber identifying information, where the state failed to satisfy the third and fourth prongs); *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 369–77 (2002) (same for the federal Food and Drug Administration Modernization Act's prohibition against advertising and promotion of particular compounded drugs); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 561–62, 565–67 (2001) (same for state regulations restricting outdoor and point-of-sale advertising for smokeless tobacco and cigars); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 504–08 (1996) (facially invaliding state statutes prohibiting advertisement

of liquor prices, where the state failed to satisfy the third and fourth prongs); *Mo. Broad. Ass'n v. Schmitt*, 946 F.3d 453, 462–63 (8th Cir. 2020) (same for state regulations restricting certain kinds of alcohol advertising); *Alexander v. Cahill*, 598 F.3d 79, 87–96 (2d Cir. 2010) (same for state restrictions on attorney advertising); *Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 167–68 & n.67 (5th Cir. 2007) (same for a state statute prohibiting insurers from engaging in joint marketing programs with tied auto repair facilities); *Pearson v. Shalala*, 164 F.3d 650, 657, 661 (D.C. Cir. 1999) (facially invalidating FDA regulations requiring sellers of dietary supplements to obtain pre-authorization before labeling the supplements with "health claims," where the government failed to satisfy the fourth prong).

In this case, the State has failed to demonstrate that Ark. Code Ann. §§ 2-1-305(6), (8), (9), and (10) survive facial review under *Central Hudson*.

First, the State has not demonstrated that the speech restricted by the challenged provisions concerns unlawful activity or is inherently misleading. *See Thompson*, 535 U.S. at 367. In particular, the State has failed to substantiate its assertion that the challenged provisions restrict inherently misleading speech, Dkt. No. 17 at 13–17. "'Inherently misleading' speech is speech that 'inevitably will be misleading' to consumers." *1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1056 (8th Cir. 2014) (quoting *Bates*, 433 U.S. at 372). While inherently misleading advertising "may be prohibited entirely," the State "may not place an absolute prohibition on certain types of *potentially* misleading information, *e.g.*, a listing of areas of practice, if the information also may be presented in a way that is not deceptive." *In re R.M.J.*, 455 U.S. 191, 203 (1982) (emphasis added).

Here, the parties agree that the challenged provisions categorically "prohibit entities from labeling their food products with traditional meat-based terms when the food items do not, in fact,

contain the traditional meat products they invoke." Dkt. No. 17 at 21. As the Court recognized in its preliminary injunction order, however, "the simple use of a word frequently used in relation to animal-based meats does not make use of that word in a different context inherently misleading," especially when the labels and advertisements include appropriate "disclosures to inform consumers as to the plant-based nature of the products contained therein." Dkt. No. 25 at 23. Because the proscribed information "may be presented in a way that is not deceptive," such as the Tofurky labels reviewed in this Court's preliminary injunction order, it is not inherently misleading and may not be categorically proscribed. *See Allstate Ins. Co.*, 495 F.3d at 166–68 (upholding a facial First Amendment challenge after concluding that the plaintiff's commercial speech, which was categorically prohibited under the challenged statute, was not inherently misleading); *Pearson*, 164 F.3d at 655–60 (facially invalidating the challenged regulations after rejecting the government's argument that health claims lacking "significant scientific agreement" are inherently misleading).[1]

---

[1] In *Upton's Naturals Co. v. Stitt*, Case No. CIV-20-938-F, 2020 WL 6808784 (W.D. Okla. Nov. 19, 2020), *appeal docketed* No. 20-6184 (10th Cir. Dec. 1, 2020), a federal district court in Oklahoma denied a motion for preliminary injunction against a law requiring purveyors of plant-based meats to disclose the plant-based nature of the products in type that is uniform in size and prominence to the names of the products. Applying *Zauderer* scrutiny, rather than *Central Hudson*, the court held that the plaintiffs were not likely to succeed in demonstrating that the challenged disclosure requirement violates the First and Fourteenth Amendments. *Id.* at *3–*5. In a footnote, the court "opine[d]" that the labels in that case were inherently likely to deceive a reasonable consumer. *Id.* at *3 n.8. The court also expressed disagreement with this Court's preliminary injunction order, though it noted that this Court's decision was based on the disclosures included in Tofurky's labels. The dicta in *Upton's Naturals* goes against the weight of authority regarding plant-based alternatives to meat and dairy products. *See* Dkt. No. 25 at 24–25 (collecting cases). Regardless, the court's decision in that case addressed only the constitutionality of a "plant-based" disclosure requirement. The court did not conclude that it is impossible to use meat-related terms in a manner that is not deceptive, nor did the court address the constitutionality of a speech *restriction* under *Central Hudson*. Indeed, the law at issue in that case expressly provides that the use of meat-related terms is not deceptive if accompanied by the mandated disclosures. *Upton's Naturals*, 2020 WL 6808784, at *1 n.3 (citing Okla. Stat. 2 § 5-107(C)(1)).

Second, the State has not submitted any evidence that the challenged provisions directly and materially advance its asserted interest in preventing *potential* consumer confusion. The State's burden under this prong of the *Central Hudson* analysis is "not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993). The "rote invocation of the words 'potentially misleading'" cannot "supplant the [government's] burden." *Ibanez v. Fl. Dep't of Bus. and Pro. Regul.*, 512 U.S. 136, 146 (1994) (quoting *Edenfield*, 507 U.S. at 771); *see also, e.g.*, *Safelite Group, Inc. v. Rothman*, 229 F. Supp. 3d 859, 880–81 (D. Minn. 2017) (holding that the government must produce "empirical evidence" to demonstrate that consumer confusion or deception is a genuine problem).

In this case, there is no evidence in either the legislative or judicial records demonstrating that consumers are confused about the use of meat-based terms for agricultural products that are not made from slaughtered animals, such as "tofu burgers" and "veggie dogs." *See* Dkt. No. 17 at 19–20. To the contrary, "courts querying the names of other plant-based 'alternative' foods have generally not found those names misleading." Order Granting in Part and Denying in Part Mot. for Prelim. Injunctive Relief at 7–8, *Miyoko's Kitchen v. Ross*, Case No. 20-cv-00893-RS (N.D. Cal. filed Feb. 6, 2020), ECF No. 46 (collecting cases)N.D. Cal. Aug. 21, 2020) (collecting cases). Nor is there any evidence that categorically prohibiting the use of meat-related terms to describe agricultural products that are not made from slaughtered animals would materially alleviate consumer confusion. Indeed, as Tofurky pointed out in its preliminary injunction motion, Act 501's restriction on the use of these terms will make it much more difficult for consumers to identify the plant-based meats they want to consume in lieu of meat from slaughtered animals, by

requiring companies to use opaque terms like "veggie tube" rather than intuitive descriptions that have long been applied to plant-based meats, such as "veggie sausage" or "veggie dogs." Dkt. No. 15 at 9; Dkt. No. 17 at 17.

In the absence of any evidence that the challenged provisions directly and materially alleviate genuine consumer confusion, the State cannot carry its burden under the third prong of the *Central Hudson* analysis. *See Alexander*, 598 F.3d at 91–95 (holding, in the context of a successful facial challenge, that the state failed to satisfy this prong of *Central Hudson* where it did not submit evidence of consumer confusion); *Allstate*, 495 F.3d at 167 (holding, in the context of a facial challenge, that the state failed to carry its burden of demonstrating that its restriction on commercial speech would alleviate potential consumer confusion); *see also Safelite*, 229 F. Supp. 3d at 882 (stating that the "lack of evidence" showing consumer deception or confusion, "combined with [competitors'] aggressive lobbying . . . calls into question [the government's] purported interest in preventing consumer deception").

Finally, the State has failed to demonstrate that the challenged provisions' categorical restriction on the use of meat-related terms is no more burdensome than necessary to vindicate its asserted interest in preventing consumer confusion. *See Central Hudson*, 447 U.S. at 566. Tofurky's preliminary injunction motion identified a number of state and federal laws that already prohibit the mislabeling of agricultural products, and consumer products more generally, including the Arkansas Food, Drug, and Cosmetic Act (AFDCA), the Arkansas Deceptive Trade Practices Act (ADTPA), the federal Food, Drug, and Cosmetic Act (FDCA), and the Federal Trade Commission Act (FTCA). Dkt. No. 15 at 11. As the Court found in its preliminary injunction order, there is "no convincing argument as to why each of these laws is ineffective at policing the alleged deceptive or confusing practices the State purports to target." Dkt. No. 25 at 27. Even if

the State had shown that "further laws" were "necessary to advance its stated purpose" (which it has not), it has not submitted any evidence showing that appropriate disclosure requirements would be insufficient to address its needs. *Id.* (citing *Pearson*, 164 F.3d at 657).

The State's failure to satisfy *Central Hudson*'s fourth prong independently supports facial invalidation of the challenged speech restrictions. *See Alexander*, 598 F.3d at 96 ("[E]ven if we were to find that all of the disputed Section 1200.50(c) restrictions survived scrutiny under *Central Hudson*'s third prong, each would fail the final inquiry because each wholly prohibits a category of advertising speech that is *potentially* misleading, but is not inherently or actually misleading in all cases."); *accord Allstate*, 495 F.3d at 168; *Pearson*, 164 F.3d at 658.

## II.     Ark. Code Ann. § 2-1-305(10) Is Void for Vagueness.

In addition to failing *Central Hudson* scrutiny for all the reasons discussed above, Ark. Code Ann. § 2-1-305(10) is also facially vague, in violation of the Fourteenth Amendment's Due Process Clause. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *see also, e.g.*, *Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1308–1311 (8th Cir. 1997). "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "When vagueness permeates the text of such a law, it is subject to facial attack." *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999). This is true even if there might be "some conduct that clearly falls within the provision's grasp." *Johnson v. United States*, 576 U.S. 591, 602 (2015).

"The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). Laws that regulate commercial enterprises are subject to less stringent scrutiny than laws that apply to the general public, because "businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* Courts have "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498–99. "[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id.* at 499. "[P]erhaps the most important factor," however, is that a law that "threatens to inhibit the exercise of constitutionally protected rights," including First Amendment rights, receives more stringent vagueness scrutiny than laws regulating unprotected conduct. *Id.*

Although Act 501 regulates commercial entities, stringent vagueness review is nonetheless warranted for several reasons. First, the civil penalties imposed by Act 501 are quasi-criminal in nature, especially given the devastating reputational and financial consequences they threaten to impose against offending entities. *See id.* at 499 & n.16 (stating that the "prohibitory and stigmatizing effect" of civil penalties is "quasi-criminal" in nature and "may warrant a relatively strict test"). Second, although Defendant Soman is authorized to waive the civil penalties if he concludes that the violation was "accidental, erroneous, or unintentional," Ark. Code Ann. § 2-1-306(c)(1), scienter is not a necessary element of the offense. Finally, the Act restricts constitutionally protected commercial speech.

Regardless of the level of scrutiny applied, Ark. Code Ann. § 2-1-305(10) facially violates the Due Process Clause. This provision makes it illegal to use a "term that is the same as or similar to a term that has been used or defined historically in reference to a specific agricultural product." As Tofurky pointed out in its preliminary injunction brief, Dkt. No. 15 at 13–14, many food-related terms have long applied to a wide variety of agricultural products, including products made from slaughtered animals and products made from plants. Ark. Code Ann. § 2-1-305(10) offers no guidance to enforcement officials or regulated entities regarding which terms are proscribed under what circumstances. Are veggie burgers prohibited? How about turkey burgers? Buffalo wings? Peppermint patties? Tuna steaks? Peanut butter? Almond butter? Goat milk? Oat milk? Tofurky? Beetballs?

The fact that such "questions . . . so readily come to mind means that it is not sufficiently clear to a manufacturer or distributor of ordinary intelligence, what exactly the statute prohibits." *Ass'n of Nat'l Advertisers, Inc. v. Lungren*, 809 F. Supp. 747, 762 (N.D. Cal. 1992) (holding that a state statute restricting the use of the term "recyclable" to articles that "can be conveniently recycled" was facially void for vagueness, because there was no standard for determining what was sufficiently convenient), *aff'd*, 44 F.3d 726 (9th Cir. 1994).

## III.     The Court Should Enter a Statewide Permanent Injunction.

Statewide permanent injunctive relief is warranted under these circumstances. Courts in the Eighth Circuit consider four factors in determining whether to issue a permanent injunction: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties; (3) whether the movant proves actual success on the merits; and (4) the public interest." *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) (quoting *Forest Park II v. Hadley*, 336 F.3d 724, 731

(8th Cir. 2003)); *see also Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."). The Court's analysis of these factors in its preliminary injunction order, Dkt. No. 25 at 28–33, applies with equal force to Tofurky's request for a permanent injunction.

First, the challenged provisions cause irreparable harm, because: (i) they violate the First and Fourteenth Amendment rights of regulated entities; (ii) they threaten to impose ruinous civil liability on any regulated entity found to be in violation; and (iii) sovereign immunity bars any claim for damages incurred as a result of the State enforcement of, or regulated entities' compliance with, the challenged provisions.

Second, both the balance of equities and the public interest support an injunction against a law that is finally determined to be unconstitutional. Neither the State nor the public has a legitimate interest in enforcing an unconstitutional law. *See, e.g.*, *Make Liberty Win v. Ziegler*, No. 20-cv-04128-SRB, 2020 WL 6493429, at *7 (W.D. Mo. Nov. 4, 2020) (citing *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006)). On the other hand, both regulated entities and the public have a strong interest in the free flow of truthful, non-misleading information about agricultural products. "Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information." *Central Hudson*, 447 U.S. at 561–62. Furthermore, "the public is served by the preservation of constitutional rights." *Phelps-Roper v. Nixon*, 545 F.3d 685, 694 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678, 691 (8th Cir. 2012) (en banc).

Because the challenged provisions are facially unconstitutional, they should be enjoined statewide. As the Eighth Circuit recently reaffirmed in *Rodgers v. Bryant*, "one of the 'principles of equity jurisprudence' is that 'the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class.'" 942 F.3d 451, 458 (8th Cir. 2019) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Thus, "injunctive relief should extend statewide because the violation established—the plain unconstitutionality of Arkansas's [food labeling law]—impacts the entire state of Arkansas." *Rodgers*, 942 F.3d at 458. Limiting injunctive relief to the plaintiff in this case "would, in effect, require every plaintiff seeking statewide relief from legislative overreach to file for class certification. That cannot be the law." *Id.*

The equities also counsel in favor of statewide injunctive relief. Regulated entities have a strong interest in the efficient vindication of their constitutional rights, and the public has an equally strong interest in the free flow of truthful, non-misleading commercial information. Limiting injunctive relief to Tofurky would not adequately protect these interests. Conversely, the State has no interest in enforcing a law that has been finally determined to violate the First and Fourteenth Amendments against anyone, including third parties not before the Court. *Cf. id.* (stating, in the context of upholding a statewide preliminary injunction, that "the remote chance that Arkansas may, at a later stage, prove its anti-loitering law constitutional cannot be held sufficient to overcome the public's interest in protecting freedom of expression under the First Amendment"). Additionally, limiting injunctive relief to Tofurky would undermine the efficient administration of justice by encouraging other regulated entities to file multiple rounds of duplicative litigation in order to obtain as-applied relief on the same facial claims that Tofurky has raised in this case. In short, "[b]ecause the constitutional violations in this case are not based on

14

facts unique to [Tofurky], a statewide permanent injunction is warranted." *Make Liberty Win*, 2020 WL 6493429, at \*7 (citing *Rodgers*, 942 F.3d at 458); *accord Langford v. City of St. Louis*, 443 F. Supp. 3d 962, 992–93 (E.D. Mo. 2020).

## IV.   Ark. Code Ann. §§ 2-1-305(2) and (5) Are Unconstitutional as Applied to Tofurky's Labels.

Ark. Code Ann. §§ 2-1-305(2) and (5) appear to replicate provisions of the federal Food Drug and Cosmetics Act, *see* 21 U.S.C. §§ 343(b), (g), and its state analogue, Ark. Code Ann. §§ 20-56-209(2), (7). For all the reasons discussed in Tofurky's preliminary injunction motion and the Court's preliminary injunction decision, Ark. Code Ann. §§ 2-1-305(2) and (5) are unconstitutional as applied to the truthful, non-misleading labels before the Court. *See* Order Granting in Part and Denying in Part Mot. for Prelim. Injunctive Relief at 7–11, *Miyoko's Kitchen*, Case No. 20-cv-00893-RS (N.D. Cal. filed Feb. 6, 2020), ECF No. 46 (holding that the plaintiff was likely to succeed in demonstrating that 21 U.S.C. § 343 and its state analogue violate the First Amendment as applied to its "vegan butter" labels, where the labels were not inherently misleading and the State failed to carry its burden under the third and fourth prongs of the *Central Hudson* analysis). The Court should accordingly enter a permanent injunction prohibiting the State from enforcing subsections (2) and (5) with respect to the labels in the record and similar materials.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (i) declare that Ark. Code Ann. §§ 2-1-305(6), (8), (9), and (10) facially violate the First Amendment; (ii) declare that Ark. Code Ann. § 2-1-305(10) facially violates the Fourteenth Amendment's Due Process Clause; (iii) permanently enjoin Defendant from enforcing Ark. Code Ann. § 2-1-305(6), (8), (9), and (10); (iv) declare that Ark. Code Ann. §§ 2-1-305(2) and (5) violate the First Amendment as applied to the labels in the record and similar materials; (v) permanently enjoin Defendant from enforcing

Ark. Code Ann. §§ 2-1-305(2) and (5) as applied to the labels in the record and similar materials; and (vi) grant any other relief that the Court deems just and proper.

Dated: January 29, 2021

Respectfully submitted,

/s/ Jeff Priebe
Jeff Priebe
Ark. Bar No. 2001124
Jeff Priebe Law Firm
PO Box 7481
Little Rock, AR  72217
Email: jeff@jeffpriebelawfirm.com
Phone: 501-580-7890

*On behalf of the Arkansas Civil Liberties Union Foundation, Inc.*

Brian Hauss*
American Civil Liberties
   Union Foundation
Speech, Privacy & Technology Project
125 Broad Street, 18th Floor
New York, NY 10004
Email: bhauss@aclu.org
Phone: 212.549.2500

Amanda M. Howell*
Alene Anello*
Animal Legal Defense Fund
525 E. Cotati Ave.
Cotati, California 94931
Email: ahowell@aldf.org
Phone: 707.795.2533

Jessica Almy*
Nicole Manu*
The Good Food Institute
1380 Monroe St. NW #229
Washington, DC 20010
Email: jessicaa@gfi.org
Phone: 866.849.4457

16

\* Admitted *pro hac vice*

*Counsel for Plaintiff*